**Rudolph Joseph ROETHEL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–01–00268–CR.**

Court of Appeals of Texas, Austin.

June 21, 2002.

Rehearing Overruled Aug. 8, 2002.

schedule, providing for reimbursement at least annually.

Tex. Lab.Code Ann. § 410.209 (West Supp. 2002) (emphasis added).

Patricia J. Cummings, Round Rock, for appellant.

Ken Anderson, Dist. Atty., Doug Arnold, Asst. Dist. Atty., Georgetown, for appellee.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and YEAKEL.

BEA ANN SMITH, Justice.

We grant the State's motion for rehearing. We withdraw the opinion and judgment dated April 25, 2002, and substitute the following opinion.

A jury convicted Rudolph Joseph Roethel on seven charges that he committed sexual offenses against his ten-year-old stepdaughter. The jury assessed the maximum sentence for each count—life in prison for aggravated sexual assault; twenty years in prison for attempted aggravated sexual assault, indecency with a child by contact, and second-degree felony criminal solicitation of a minor; and ten years for both indecency with a child by exposure and third-degree felony criminal solicitation of a minor. *See* Tex. Pen.Code Ann. §§ 15.01, 15.031, 21.11, & 22.021 (West 1994 & Supp.2002). Appellant does not challenge his convictions, but contends that the trial court erred at the punishment phase by permitting the State to call appellant's sister to testify about his sexual assaults of her; appellant contends that the State's notice of intent to introduce evidence of extraneous offenses was insufficient because it did not specify the dates

and places that the assaults allegedly occurred. We agree that the notice failed to give specific dates or places, but conclude that the circumstances of this appeal require that we hold that the deficient notice was harmless. We grant the motion for rehearing and will affirm the judgment.

## BACKGROUND

Because appellant does not challenge his conviction (and, at the punishment phase, admitted his guilt), we need not extensively recount the evidence that on various occasions appellant touched his minor stepdaughter's breasts with his hand or mouth, penetrated her vagina with his finger, and showed her his erect penis, asking her to touch him and to have sex with him.

Before trial, appellant requested that the State disclose its intention to introduce evidence of other crimes, wrongs, or acts at the punishment phase. The State responded that it intended to introduce evidence that "Rudolph Roethel committed the act of Aggravated Sexual Assault of his sister [name omitted] when she was a child." At the punishment phase, when the State called appellant's sister to testify about those events, appellant objected that the notice of her testimony was inadequate because it did not state when and where the alleged offenses occurred. The court, while agreeing that the notice could have been more specific, concluded that the notice satisfied the purpose of the rule because the notice was sufficient to avoid unfairly surprising the defendant.

Appellant's sister, who is a year younger than appellant, testified that he sexually assaulted her at their home from the time she was twelve years old until he left for the army when she was seventeen years old—approximately from 1969 through 1974. She said he would touch her breasts with his hand and try to put his hands down her pants. She said she sometimes was awakened by him pulling off her underwear or penetrating her vagina with his penis. Appellant was never charged with or convicted of these assaults.

After several witnesses testified on appellant's behalf, including psychologists to whom he admitted assaulting his sister, appellant himself testified. He acknowledged committing the offenses against his sister and his stepdaughter.

## DISCUSSION

■■■ By his sole point of error, appellant contends that the district court erred at the punishment phase by admitting his sister's testimony regarding his assaults on her. He contends that the State gave insufficient notice of its intent to introduce evidence of those assaults. Evidence of crimes, wrongs, or acts arising from an incident other than the one at issue is admissible for limited purposes only if, upon timely request by the defendant, the State gives reasonable notice of its intent to introduce that evidence in its case-in-chief. Tex.R. Evid. 404(b). Rule 404(b) does not define the term "reasonable." The notice requirement specific to the punishment phase states:

> On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Criminal Evidence. If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, *notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred* and the name of the alleged victim of the crime or bad act.

Tex.Code Crim. Proc. Ann. art. 37.07, § 3(g) (West Supp.2002) (emphasis added).

■ We review the admission of evidence of extraneous offenses for an abuse of discretion. *See Mitchell v. State,* 931 S.W.2d 950, 953 (Tex.Crim.App.1996). That means we will affirm the trial court's decision if it is within "the zone of reasonable disagreement." *Salazar v. State,* 38 S.W.3d 141, 153–54 (Tex.Crim.App.2001).

The Legislature's enactment of article 37.07, section (g), limits the trial court's discretion to admit evidence of extraneous offenses at the punishment phase. Unlike Rule 404(b), article 37.07, section 3(g) specifies that notice is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred. *Compare* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(g) *with* Tex.R. Evid. 404(b). Despite the plain language of the statute, courts have carved out exceptions to the rule so that the notice need not specify exact counties. *See Roman v. State,* 986 S.W.2d 64, 65 (Tex.App.-Austin 1999, pet. ref'd); *see also James,* 47 S.W.3d 710, 714 (Tex.App.-Texarkana 2001, no pet.). Courts also have given the State leeway in specificity regarding dates, perhaps because children (and adults victimized as children) may not always be able to recall specific dates of offenses. *See Splawn v. State,* 949 S.W.2d 867, 870–71 (Tex.App.-Dallas 1997, no pet.); *Hohn v. State,* 951 S.W.2d 535, 537 (Tex.App.-Beaumont 1997, no pet.). *But see James,* 47 S.W.3d at 714.

Appellant contends that the court erred by admitting the evidence because the State's notice was unreasonable. He preserved his right to complain about the lack of a date and county in the notice by objecting at trial on this basis at the outset of the punishment phase and when the State called his sister to the stand. *See* Tex.R.App. P. 33.1(a)(1)(A). The notice statute does not require that defendants complain about the adequacy of notice before trial. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 3. Although a pretrial objection would let the State correct deficiencies while still giving defendants time to prepare for trial, we find no such requirement imposed on defendants. *See James v. State,* 47 S.W.3d 710, 714 (Tex.App.-Texarkana 2001, no pet.) (noting that defendant "is not required to complain about the adequacy of the notice, but that the State is required by statute to provide specific information"). The objection at trial was sufficient. By the same token, appellant's failure to object that the State did not give notice of more than one extraneous offense prevents him from raising this complaint on appeal. *See* Tex.R.App. P. 33.1(a).

The State provided virtually no notice of the county and date of the offenses. The notice states that appellant "committed the act of Aggravated Sexual Assault of his sister [name omitted] when she was a child." The only indication of a county in the notice arises from an implication that the brother and sister involved lived together during their childhood; the notice, however, does not exclude the possibility that the offense occurred away from their home. We need not decide whether the notice is sufficient as to the place of the offense because it provides insufficient notice of the date of the offense. *See James,* 47 S.W.3d at 714. The notice limits the span of time during which the offense occurred only to the victim's childhood. Even discounting the years of infancy and early childhood of appellant and his sister, the notice narrows the period to a range of about eight years. Although courts have allowed some range of time to satisfy the requirement of a specific date, we conclude that an implication of a roughly eight-year span is too general to satisfy even those relaxed standards. Courts cannot completely ignore the Legislature's determination that notice lacking a specific date is unreasonable. *See* Tex.Code Crim. Proc.

Ann. art. 37.07, § 3. Under these facts, we must conclude that the notice was unreasonable as a matter of law and that the evidence accordingly was inadmissible. The district court abused its discretion by concluding otherwise.

■ In its motion for rehearing, the State contends that its failure to provide reasonable notice of its intent to offer extraneous offense evidence under article 37.07 section 3(g) does not automatically render such evidence inadmissible. We disagree. Before 1993, the State could not offer evidence of unadjudicated extraneous offenses at punishment hearings. *See Grunsfeld v. State*, 843 S.W.2d 521, 523 (Tex.Crim.App.1992) (unadjudicated extraneous offense evidence inadmissible under former article 37.07 section 3(a)). In 1993, the Legislature simultaneously removed the bar to the admissibility of such evidence based on its substance and imposed a procedural requirement for its admissibility. *See* Act of May 29, 1993, 73rd Leg., R.S. Ch. 900, §§ 5.05–5.06, 1993 Tex. Gen. Laws 3586, 3759 (codified at Tex.Code Crim. Proc. Ann. art. 37.07, §§ 3(a) & 3(g)). The language of section 3(g) is mandatory; it states that the State "must" give notice upon timely request and deems the notice a "requirement." *See id.* The logical and proper consequence of violations of section 3(g) is that the evidence is inadmissible. If the evidence is admissible despite the State's failure to comply with the notice requirement, the requirement is a nullity. We are not empowered to disregard statutes that are constitutional, consistent with other statutes, and clear.

■ We are empowered and required to consider whether the district court's admission of the evidence was harmful. *See* Tex.R.App. P. 44.2. Although the notice provision is mandatory, "the violation of a mandatory statute does not, by itself, call for the reversal of a conviction." *Ford v. State*, 73 S.W.3d 923, 925 (Tex.Crim.App. 2002). The erroneous admission of evidence of an extraneous offense in violation of the evidentiary rules does not violate the state or federal constitutions. *Avila v. State*, 18 S.W.3d 736, 741–42 (Tex.App.-San Antonio 2000, no pet.); *see also* Tex.R. Evid. 404(b). Nor do we see a constitutional dimension in the admission of such evidence despite a statutory procedural bar. We must disregard any nonconstitutional error that does not affect substantial rights. *See* Tex.R.App. P. 44.2(b). To assess nonconstitutional errors, we examine whether the purpose of the statute or rule violated was thwarted by the error. *See Ford*, 73 S.W.3d 923, 925–26. For instance, the court of criminal appeals assessed the erroneous denial of a jury shuffle by determining whether the defendant was afforded a randomly selected jury. *Id.* In another case, the court of criminal appeals held that a violation of the requirement that a defendant's waiver of jury trial be in writing was harmless because the record showed that the purpose of the statute—to ensure that the defendant understands the right he is waiving— was accomplished without the writing. *Johnson v. State*, 72 S.W.3d 346, 348–49 (Tex.Crim.App.2002).

■ Accordingly, we must assess the harm from the violation of the notice provision of article 37.07, section (g) against its intended purpose. Although the violation of the notice provision resulted in the improper admission of evidence, we cannot employ the harm analysis used for violations of the rules of evidence concerning relevancy because the purpose of those rules differs from the purpose of the section (g) notice provision. The rules of evidence governing relevancy limit the use of evidence that may be unfairly prejudicial or misleading; for instance, evidence of other crimes, wrongs, or acts is inadmis-

sible to prove the character of a person to show that the commission of the crime at issue is consistent with the defendant's character, but is admissible for other purposes. *See* Tex.R. Evid. 404(b). When evidence of an extraneous offense is admitted to prove such character conformity, we examine the record to determine· how the admission of this substantively inadmissible evidence affected the jury's verdict. *See Avila,* 18 S.W.3d at 742. That test is appropriate because the erroneous admission of the evidence thwarts the rule's purpose of shielding the jury from evidence used for improper reasons. *See id.* The notice requirement found in section 3(g), however, does not relate to the substantive admissibility of the evidence. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(g). The lack of notice does not render the evidence inherently unreliable, but instead raises a question about the effect of procedural noncompliance. The purpose of the notice requirement is to enable the defendant to prepare to meet the extraneous offense evidence. *See Nance v. State,* 946 S.W.2d 490, 493 (Tex.App.-Fort Worth 1997, pet. ref'd). Thus, we must analyze how the deficiency of the notice affected appellant's ability to prepare for the evidence. For guidance on formulating this test, we look to the test used when the State violates a requirement that it provide a list of witnesses, but then calls someone not on the list. *See Wood v. State,* 18 S.W.3d 642, 649 (Tex.Crim.App. 2000). When a district court allows the State to call an unlisted witness, we evaluate whether ·the prosecutor has acted in bad faith and whether the defendant reasonably could have anticipated the witness's testimony. *See id.* Although the *Wood* court used this test to determine error, we conclude that the same factors are useful in determining whether the deficient notice frustrated the purpose of the statute and thereby harms the defendant.[1]

Accordingly, we will examine the record to determine whether the deficient notice resulted from prosecutorial bad faith or prevented the defendant from preparing for trial. In determining the latter, we will look at whether the defendant was surprised by the substance of the testimony and whether that affected his ability to prepare cross-examination or mitigating evidence.

We find no indication of bad faith in the State's failure to provide sufficient notice. The notice named the victim, specified the offense, and gave a general idea of when it occurred. Although it did not satisfy the statutory requirements for specificity, there is no indication from the record that the generality was intended to mislead appellant and prevent him from preparing a defense.

Nor did the deficiencies in the notice actually prevent appellant from preparing for his sister's testimony. The notice informed him that she would testify about a sexual assault he committed on her when she was a child. She testified about a series of offenses occurring over a period of several years. There is no indication

---

1. This test is also analogous to that used by the court of criminal appeals in assessing harm from the variance between an indictment and the proof at trial. *See Gollihar v. State,* 46 S.W.3d 243, 258 (Tex.Crim.App. 2001). In that case, the serial numbers of property introduced at trial differed from the numbers alleged in the indictment. *Id.* at 244. The court concluded that the variance was immaterial because the serial number was not an element of the offense and because appellant was not misled by the indictment, surprised by the proof, or subject to a subsequent prosecution regarding the property marked with the serial number listed in the indictment. *See id.* at 258. The court affirmed the judgment essentially because the variance did not thwart the purpose of the indictment—to inform the defendant of the charges against him. *See id.* at 257–58.

that appellant did not recall that he sexually assaulted her or that he was surprised by any of her testimony. Before trial, appellant admitted to psychologists that he had sexually assaulted his sister, though he did not admit to them the scope of the assaults his sister claimed occurred. In his testimony at trial, he generally admitted that he had assaulted her and did not contradict any of her testimony. His attorney cross-examined his sister and presented witnesses, including his psychologists and general character witnesses, to blunt her testimony. There is no indication that the deficiency in the State's notice prevented appellant from adequately preparing his defense.

Because the record does not reveal that the deficient notice was the result of prosecutorial bad faith and because the record shows that the deficient notice did not impair appellant's ability to prepare for that evidence or otherwise present a defense, we conclude that the deficient notice did not affect appellant's substantial rights.

We cannot emphasize strongly enough that this conclusion is controlled by the facts of this case. In its motion for rehearing, the State asserts that an utter failure to give any notice in this case would have been harmless. We caution the State not to take this opinion as license to ignore the Legislature's mandate that the State provide notice upon request of the date and county of extraneous offenses that have not resulted in convictions. Utterly failing to provide the required notice would automatically render the evidence inadmissible; the State would risk having the district court correctly exclude the evidence, thus depriving the fact finder of otherwise admissible evidence. Inviting trial courts to commit error by admitting such evidence despite the lack of the required notice would generate appeals and risk reversal of punishments based on otherwise admissible evidence. Blatant disregard of the notice requirement would be strong evidence of bad faith on the prosecutor's part and would in most cases impair the defendant's ability to prepare for trial—either of which would require reversal of the sentence imposed. Such inaction by the State would be a senseless and gross waste of the time and resources of the State, the defendant, and the judicial system. The better practice is for the State to give notice with the specificity the Legislature has mandated.

## CONCLUSION

We resolve the sole issue in favor of the judgment and affirm the judgment.